IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Phyllis A. Huster, | ) |
|                Plaintiff, | ) No. 13-cv-06143 |
| v. | ) Hon. Joan Humphrey Lefkow |
| j2 Global Communication, Inc., Advanced Messaging Technologies, Inc., Unified Messaging Solutions, LLC, Acacia Patent Acquisition LLC, and Charles R. Bobo II, | ) |
|                Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO ALL DEFENDANTS' MOTION TO DISMISS FOR ALLEGED LACHES IN MAKING HER CLAIM OF INVENTORSHIP OR CO-INVENTORSHIP OF THE PATENTS IN SUIT**

Plaintiff Phyllis A. Huster respectfully responds as follows in opposition to the Rule 12-b-6, F.R.Civ.P., motion of all Defendants [docket nos. 36, 37 pp. 7-13] to dismiss the Complaint on the ground of alleged laches. Briefly, there is no laches ground –after 6 years or otherwise – for avoiding a 35 USC §256 correction of inventorship action, since the alternative is a finding of invalidity and thus of forfeiture of all the "Bobo" patents in suit upon any accused infringer's proof of Mr. Bobo's incorrect claiming of sole inventorship. Also, in any event, proofs will show that Ms. Huster acted soon after she had actual knowledge that Mr. Bobo incorrectly claimed sole inventorship of the patents in suit. Last, Defendants show no change in their positions in any respect that might make the equitable doctrine of laches applicable to avoid injustice to them as the patents' present claimants.

Prompt denial of this and the other five preliminary motions, so that the merits of the inventorship claims can be reached, and the MDL case properly disposed of, is earnestly requested.

I. CORECTION OF INVENTORSHIP IS ALLOWED, INDEED ENCOURAGED, AT ANY TIME

The patent statute, 35 USC §256, provides, in pertinent part:

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

No limitations period for correcting inventorship is set forth in that section or otherwise.

Defendants cite *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157 (Fed. Cir. 1993) ("*ACS*"), for much of their argument. Defs' Memo at 2, 8-10. The Appeals Court in *ACS*, however, reversed the district court's dismissal of an inventorship claim under Rule 12-b-6, F.R.Civ.P., and remanded the claim for determination. In *ACS*, the omitted inventor's delay was 8 years, from patent issuance in 1982 until his suing for correction in 1990. This 8-year "delay" negates Defendants' position here that a 6-year delay is somehow magically dispositive... Nothing in the *ACS* case supports the Motion to dismiss Ms. Huster's claim on ground of laches.

Indeed, the Court in *ACS* first observed,

> Dismissal of a [§256] claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, 1028 (Fed.Cir.1992) (en banc). Both of these factual premises must be met, predicate to the weighing of the facts of delay and prejudice to determine whether justice requires that the claim be barred. **The mere passage of time does not constitute laches.**

*ACS*, at 1161 (emphasis added). Further, the Court observed,

> ***The strictures of Rule 12(b)(6),*** wherein dismissal of the claim is based solely on the complainant's pleading, ***are not readily applicable to a determination of laches.***"

*Id.* (emphasis added.) All facts stated in the Complaint are taken as true, *Id.* Ms. Huster's Verified Complaint has no admission or indication of undue delay from when she knew or should have known of her being omitted from inventorship on any patent issued to Mr. Bobo on her inventions – Defendants point to no such facts except for her participation in an initial meeting with patent counsel, Mr. Sutcliffe. Thus, the Defendants' rejoicing simply that more than 6 years have passed after issuance of the first "Bobo" patent should be disregarded.

Indeed, facts can and will be proven at trial that Mr. Bobo was deeply reluctant to file any patent application, that he met with the patent attorney only at Ms. Huster's insistence, and that he then entirely failed to respond to Ms. Huster's repeated communications to him after she left Bobo's company for other work, first travelling extensively from Atlanta, and then moving to New Jersey and then Seattle. She was never asked to sign any Declaration as to inventorship, which she reasonably could take as meaning that nothing was filed – ***not*** that her invention had been stolen by Mr. Bobo to himself with the aid of Ms. Huster's own counsel. She had no obligation, on these facts, to search for any patent on her invention, as there almost certainly was none. She reasonably trusted the integrity of those she had worked with, and she had no reason to suspect them of theft of her patent rights -- abandonment, perhaps, but not theft.

In any event, the Federal Circuit Court in *ACS* noted that since incorrect inventorship is a defense to a patent infringement charge throughout a patent's life, correction of inventorship must similarly be available throughout that time, subject only to equitable principles. Those

principles deny correction of inventorship *only* where the omitted inventor for instance has "gamed the system", such as for keeping a higher-paying job rather than claiming royalties or for having an employer duped into paying the costs of the patenting process rather than costs being borne by the individual inventors. *See, e.g., Frugoli v. Fougnies,* 74 USPQ2d 1716, 1721 (D. Ariz. 2004); *Serdarevic v. Advanced Medical Optics, Inc.* 2007 WL 2774177, at 7-8; *Moore v. Broadcom Corp.* WL 425932 (N.D.Cal. 2008); and *Lane & Bodely v. Locke*, 150 US 193, 200-201 (1893). None of those cases has facts similar to those of Ms. Huster's case here.

Here, the Complaint establishes that Ms. Huster had no reason *sua sponte* to check on issuance of any "Bobo" patent, both (1) since it was her own attorney who was preparing the joint patent application and (2) since Charles Bobo had been adamantly opposed to filing *any* patent application. (Verified Complaint, ¶¶ 13-15; this will be made clearer in an Amended Complaint, to be filed by next week of right) Ms. Huster indeed took employment with another company in Atlanta that required her extensive out-of-town travel, then left Atlanta entirely for employment in New Jersey, and then later moved to Seattle. She heard nothing about signing an oath, filing an application, or issuance of a patent, so she had no duty of inquiry but reasonably could assume, as she did, that Mr. Bobo had dropped any quest for a patent on her or their invention. Only in 2010, when counsel for one of j2's litigation opponents contacted her for information to defend against j2's infringement assertions, was she put on notice that any patent had actually been granted on her fax to internet or email system invention.

II.  **MS. HUSTER HAD NO DUTY OF INQUIRY AS TO STOLEN PATENT RIGHTS IN VIEW OF MR. BOBO'S GREAT RELUCTANCE TO FILE AND OF THE COMPLETE SILENCE FROM ATLANTA AFTER SHE LEFT FOR NEW JERSEY AND LATER SEATTLE**

In the face of the active concealment from her of actual completion and filing of the "Bobo" patent applications by Mr. Bobo and Ms. Huster's (former) counsel, and in view of Mr. Bo-

bo's stated reluctance to proceed with *any* patent filing, Ms. Huster had no duty of inquiry as to the status of any patent application or issued patent in or after 1995. Only when one infringement defendant's counsel made inquiry of her -- in 2010 -- could any such duty of inquiry have arisen. J2 agrees that this is the standard, since it quotes exactly that proviso of Federal Circuit and Supreme Court cases,

> … provided that the facts already known by [the omitted inventor] were such as to put upon a [person] of ordinary intelligence the duty of inquiry.

Defs' Memo, p. 9. Ms. Huster knew of *no* such facts and therefore had *no* such duty prior to a defendant's counsel's approaching her in 2010. As the Court in *ACS* stated, "Constructive notice is not an appropriate substitute for the determination of reasonableness or excuse for delay." *ACS*, at 1162.

J2, on the other hand, very likely well knew of Ms. Huster's inventorship or co-inventorship of the "Bobo" patents when it found that Mr. Bobo did not know and could not explain the patented invention to j2 and other personnel. Certainly by the time j2 contacted Ms. Huster to solicit her employment at j2 in 1999 (Verified Complaint, ¶9), j2 knew of her role in the inventions – although of course its personnel did not advise her then that j2's interest was spurred by its knowledge of her involvement in those patented inventions. J2's later settlement offer to her – when she did know of Mr. Bobo's duplicity – , her rejection of that offer, and j2's withdrawal of its settlement offer on a pretext of loss of confidentiality and concealment from defendants of her role, further establish j2's failure to rely on any prior inaction by Ms. Huster.

Defendants' posturing that Ms. Huster "should have inquired about the patents" (Defs' Memo, p. 8) begs the question as to how she might have known of those patents prior to being told of them in 2010. Certainly, she put some effort into working with Mr. Bobo and her / their

patent counsel to get a patent application prepared in 1995, but the application was not completed or filed when she left Mr. Bobo and started working with a new firm, started travelling heavily outside Atlanta, and eventually took other positions in New Jersey and later Seattle. She had agreed with Mr. Bobo and counsel that she would be named on the patent application, but she knew that Mr. Bobo was very reluctant to proceed. When she received no further communications as to any patent filing, and when phone calls and emails that she made or sent to Mr. Bobo and to her patent counsel were not returned, it was certainly reasonable for her to conclude that no patent had been filed. J2's theory that her name had wrongfully been left off a patent that actually was filed for was unfathomable at that time. She was busy with her own work after she left Mr. Bobo in 1995. Thus, until 2010, it was entirely objectively reasonable for Ms. Huster to conclude that Mr. Bobo had simply abandoned the patent idea, as he had argued for. Nothing could have triggered any suggestion that a patent had actually been filed for and/or was only in Mr. Bobo's name, until 2010. Not even j2 in 1999 raised with Ms. Huster any suggestion that Mr. Bobo had filed for or obtained important patents on a fax to email or internet system, or that her name had been wrongfully omitted from such important patents. This occurred despite j2's then being motivated to contact her to work in its field of fax to email or internet communications. Defendants' argument that she "should have [successfully] inquired" or "should have known" rings entirely hollow in view of the facts set forth in the Verified Complaint, the coming Verified Amended Complaint, and as will be proven at trial or hearing of this matter.

## III. DEFENDANTS' ARGUMENTS AND CITED CASES ARE INAPPOSITE

The *ACS* case allows only for a *rebuttable presumption* of laches and only *after* passage of six years from actual or imputed knowledge of the fact of omission of inventorship, 988 F.2d, at 1163. However, "a presumption will **not** support judgment on the pleadings under Rule

12(b)(6)." *Id.* (emphasis added.) Defendants' footnote 7 statements (Memo, pp. 7-8) that the presumption is nonetheless "highly relevant" and "can establish laches on a Rule 12(b)(6) motion" are unsupportable. Such a presumption does not arise here in view of the Verified Complaint's statement that Ms. Huster learned of the faulty inventorship of the "Bobo" patents only in 2010, well within even a 6-year period before she filed for correction. Any presumption will be further rebutted by facts adduced at hearing of this matter. No presumption of laches barring Ms. Huster's claim of inventorship or co-inventorship appears in the Complaint or on this Motion.

There being no presumption of laches here, the remainder of Defendants' Memo on this issue is irrelevant. Their cited cases of *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352 (Fed.Cir. 2008); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548 (Fed.Cir. 1996); and *Aukerman v. R.L. Chaides Constr. Co.*, 960 F.3d 1020 (Fed.Cir. 1992), are irrelevant here in that respect, as their delays exceeded 6 years, versus the maximum 2-3 years here.

## IV. DEFENDANTS' PAST INVESTMENTS IN ACQUIRING AND ENFORCING THE "BOBO" PATENTS CREATE NO ECONOMIC PREJUDICE

The second leg of Defendants' burden to prove laches also fails: their arguments in section II.C. (Memo, pp. 11-13) fail to show what they would have done differently had Ms. Huster made her claim to inventorship or co-inventorship soon after the first 'Bobo' patent issued. Certainly, Defendants' campaign of monetizing the "Bobo" patents through licensing, litigation, and threats of litigation has been wildly successful and profitable for them; Ms. Huster's involvement as an inventor and co-inventor in 1995 or 1997 would not have interfered with cooking that golden goose, its golden eggs, or its golden offspring. Being busy in Atlanta after she parted with Mr. Bobo, being gone to New Jersey and then Seattle, she would have relied on Mr. Bobo, their counsel, and subsequent owners to exploit the patents, perhaps exactly as they have.

However, Defendants' concealing Ms. Huster's legitimate rights to the inventions and patents gives them no right, now, to object that had she come forward earlier to defeat their scam they would have made less money – certainly Mr. Bobo would have shared his $4.7MM sales revenue with Ms. Huster. Subsequent resale and license revenues from and to j2, UMT, Acacia, and others may have gone only to the intermediate owners just as they have, since Mr. Bobo was by then likely out of the revenue stream apart from his initial take. Ms. Huster would have been able to help j2 and so could well have reaped rewards beyond patent licensing revenue had the "Bobo" patents earlier been revealed to her.

Defendants' concealment of Ms. Huster's role and rights as an inventor and initial owner or co-owner of the "Bobo" patents of course prevented her from having her say in the initial and later exploitation of the patents. J2 and the other Defendants cannot now complain that their revenue, too, will be impacted by the ruling sought in this case; it is their delay in acknowledging Ms. Huster's role that now will impact their revenue, not their past exploitation of the patents. Had Ms. Huster been named on the patents all along she could have participated in expenses involved in their exploitation, but accounting now for those expenses seems unnecessary as they are sunk costs and would involve vast amounts of effort, including foraging through attorney billing records, in accounting for them.

Further, had the patents been jointly applied for, Ms. Huster's counsel would surely have prepared a joint exploitation agreement between Mr. Bobo and Ms. Huster, providing for agreement on all sales and licenses of the inventions patented. Those may well have provided for much less than 50% of the income going to Mr. Bobo, since he had just a minor role in creating the inventions – he made *no* sole inventions among the issued patents, for instance, as Ms. Huster has stated in her Verified Complaint.

V.   **CONCLUSION**

No laches bar to proceeding with Ms. Huster's complaint can appear here, on a rule 12-b-6 motion or otherwise. The motion as to laches should be denied and the case set for an early hearing on the merits.

Dated: December 5, 2013          Respectfully submitted,

/s/John R. Crossan
John R. Crossan
CROSSAN INTELLECTUAL PROPERTY LAW, LLC
444 N. Michigan Ave., #2600
Chicago, Illinois 60611
(312) 670-6860
(312) 264-0770 (facsimile)
jrc@crossaniplaw.com
*Attorney for Plaintiff Phyllis Huster*

**CERTIFICATE OF SERVICE**

The foregoing document is being filed electronically with the Clerk of the Court using the CM/ECF system on this 5th day of December 2013, which will automatically send email or other notifications of such filing to all counsel of record.

/s/John R. Crossan